#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

    Plaintiff,

    v.

CORIZON HEALTH, INC. *ET AL.*,

    Defendants.

Case No. 18-3119-EFM-ADM

### MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff Jeffrey J. Sperry's Motion to Recuse the Magistrate Judge (ECF 77); Mr. Sperry's Motions to Disqualify Defense Counsel (ECF 78 and 91); Mr. Sperry's Motion to Set Aside the Scheduling Order (ECF 88); and Mr. Sperry's Motion to Extend Discovery (ECF 93). Mr. Sperry's motion to extend discovery was automatically referred to the undersigned on August 20, 2020. On August 24, 2020, the district judge referred the other motions to magistrate judge for disposition. Except for Mr. Sperry's fully briefed motion for recusal, all other motions are in various stages of briefing. However, the court will proceed to rule on the motions because of the time-sensitive nature of some of the relief requested, to clarify issues at this late stage of the case, and because Mr. Sperry's motions themselves do not meet the legal standard for the court to grant the relief he has requested. For the reasons explained in more detail below, Mr. Sperry's motions are denied.

## I.      Motion to Recuse the Magistrate Judge (ECF 77)[1]

Two federal statutes govern judicial recusal: (1) 28 U.S.C. §§ 144[2] and 455.  Mr. Sperry's motion does not specify under which statute he moves, but his reply relies on § 455(a) and (b)(1). These statutory subsections require a judge to disqualify herself in any proceeding in which her "impartiality might reasonably be questioned" or if she "has a personal bias or prejudice concerning a party."  Section 455(a) "is a 'catch-all' provision that is broader than the specific grounds for disqualification set forth in § 455(b)." *United States v. Young*, 45 F.3d 1405, 1415 (10th Cir. 1995).  More specifically, §455(a) requires disqualification for the appearance of impartiality, whereas § 455(b)(1) requires disqualification for actual partiality. *Burke v. Regalado*, 935 F.3d 960, 1053 (10th Cir. 2019).

The test for determining impartiality is an objective one.  *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).  Under § 455(a)'s more liberal standard, a judge must recuse "when there is the appearance of bias, regardless of whether there is actual bias." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002).  "The test is whether a reasonable person,

---

[1] Mr. Sperry asks "the court" to recuse the magistrate judge and strike the magistrate judge's orders.  To the extent Mr. Sperry intended to direct the motion to the district judge, the district judge referred this motion to the undersigned.  It is a non-dispositive motion and "motions to recuse are ordinarily directed to the judge whose recusal is sought." *Waterman v. Groves*, No. 18-3092-JWB-KGG, 2020 WL 4045199, at *4 (D. Kan. July 17, 2020) (taking up plaintiff's third motion to recuse the magistrate judge "rather than ask Magistrate Judge Gale to repeat his analysis yet a third time").

[2] Section 144 provides that a judge should recuse if the party seeking recusal submits a "timely and sufficient affidavit" illustrating that the judge has a personal bias or prejudice towards a party. "The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Conclusions, beliefs, and opinions are insufficient to meet a movant's requirement. *Id.*  Mr. Sperry's motion is denied under this statute for essentially the same reasons as the court denies the motion under § 455. *See Vazirabadi v. Denver Health & Hosp. Auth.*, 782 F. App'x 681, 685 (10th Cir. 2019) (explaining that § 455(b)(1) "duplicates the grounds for recusal set forth in § 144").

knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). But § 455(a) must not be construed so broadly that it mandates recusal based on unsubstantiated suggestions of bias. *United States v. Cooley*, 1 F.3d 985, at 993 (10th Cir. 1993); *see also David v. City & Cnty. of Denver*, 101 F.3d 1344, 1351 (10th Cir. 1996) (explaining that a judge has "as much obligation . . . not to recuse when there is no occasion for him to do so as there is for him to do so when there is"). The party moving for disqualification bears the burden of proof. *Burke*, 935 F.3d at 1054; *see also Topeka Housing Auth. v. Johnson*, 404 F.3d 1245, 1247 (10th Cir. 2005) (characterizing the burden as a heavy one).

Mr. Sperry bases his motion to recuse on adverse rulings and an alleged prior professional connection between the undersigned and defense counsel, but neither are circumstances that would cause a reasonable person to harbor doubts about the undersigned's impartiality under § 455(a), much less demonstrate a personal bias or prejudice under § 455(b)(1).

**A. Adverse Rulings**

Adverse rulings generally do not form a basis for disqualification because only in the "rarest circumstances" would they evidence a significant degree of favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also United States v. Nickl*, 427 F.3d 1286, 1298 (10th Cir. 2005) (adverse rulings themselves do not support a bias charge and are grounds for appeal, not recusal); *Hall v. Doering*, 185 F.R.D. 639, 643 (D. Kan. 1999) ("Recusal statutes are meant to shield litigants from biased and prejudiced judges, and not as a means of protesting court orders and procedures with which litigants disagree.").

Mr. Sperry references the court's issuance of a scheduling order; the court's rulings on Mr. Sperry's motion to amend and motion for a medical malpractice screening panel; and the court's ruling on the Corizon defendants' motion for a protective order. He argues these rulings

3

were in error and imply bias in that the court granted the Corizon defendants' motion for a protective order while denying Mr. Sperry's motions. Mr. Sperry's arguments amount to disagreements with the court's rulings and the fact that these rulings were largely adverse to Mr. Sperry. He points to nothing in those orders that would suggest favoritism or antagonism, and therefore there is no indication of actual bias or even an appearance of bias.

## B. Alleged Business Relationship

"The two-part test for whether a judge should disqualify himself because of a relationship with a lawyer is whether the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." *United States v. Mendoza*, 468 F.3d 1256, 1263 (10th Cir. 2006). In this case, however, the undersigned and defense counsel do not have a relationship at all, much less a relationship that could interfere with the undersigned's ability to be impartial.

Mr. Sperry also contends that the undersigned's "business relationship" with defense counsel renders her incapable of acting as a neutral and unbiased jurist. He suggests that the undersigned's former law firm has represented clients in 161 cases where defense counsel's law firm represented codefendants. (ECF 77-1 ¶ 2.) In particular, he points to *Evans v. Bristol-Meyers Squibb Co.*, 16-1039-EFM, in which he claims that the undersigned worked "hand in hand" with defense counsel to defend the pharmaceutical company defendants. Not only is this not a proper legal basis for recusal, it is factually incorrect. As the Corizon defendants note, the undersigned was not counsel of record in *Evans* and was not otherwise involved with the case. Defense counsel's affidavit states that, to his knowledge, he has not litigated a case with the undersigned and has never personally met the undersigned. (ECF 79-1, at 1-2.) This is correct. The undersigned has no prior professional relationship with defense counsel. But even if the

4

undersigned and defense counsel had represented codefendants in the same case, this alone would not rise to the level of a professional relationship warranting disqualification. *See Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1508 (10th Cir. 1995) (the fact of a prior professional relationship itself is not enough to warrant recusal). And the fact that the undersigned's former law firm may have represented clients in cases in which defense counsel's firm also represented clients certainly does not meet the standard.

For these reasons, the court denies Mr. Sperry's motion for recusal and summarily denies Mr. Sperry's request to strike all of the undersigned's orders in this case.

## II.     Motions to Disqualify Defense Counsel (ECF 78 and 91)

"It is well-established that ordinarily 'the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge,' and is thus a matter of judicial discretion." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). When faced with a motion to disqualify counsel, the court must consider both the local rules of the court in which the attorney appears and the "standards developed under federal law." *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005) (citing *Cole,* 43 F.3d at 1383) (overruled on other grounds). In other words, "motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (10th Cir. 1994) (internal quotations omitted).

This district has adopted the Kansas Rules of Professional Conduct ("KRPC"). *See* D. KAN. RULE 83.6.1(a) (stating the Kansas rules apply "except as otherwise provided by specific rule of this court"). But an ethical violation does not necessarily trigger disqualification. *See Koch v. Koch Indus.*, 798 F. Supp. 1525, 1531 (D. Kan. 1992). Rather, the court must consider whether disqualification serves the purpose behind the rule in question. *See id.* The moving party bears

5

the burden to demonstrate circumstances warranting disqualification, and the court must balance the interests of protecting the integrity of the judicial process against a party's right to its counsel of choice. *See id.* at 1530. The court retains discretion to determine whether disqualification is warranted, but it must be mindful that a motion to disqualify can be improperly used as a litigation strategy. *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir. 1985).

In this case, Mr. Sperry argues the court must disqualify defense counsel and their law firm because of a concurrent conflict of interest among defendants. Specifically, he argues that Ms. Talbert and Ms. Brundage have stated that they were prevented from rendering treatment to Mr. Sperry because of Corizon's policies, and Corizon asserts that it cannot be held liable because it is not a healthcare provider, and so liability falls to the nurses. These mischaracterizations of defendants' positions do not demonstrate that a conflict of interest exists, and even if one did, Mr. Sperry has not demonstrated that he has standing to move for disqualification on this basis.

### A. No Conflict of Interest Exists

KRPC 1.7 addresses conflicts of interests among current clients. It provides that a lawyer may not represent a client if a concurrent conflict of interest exists, which occurs when "the representation of one client will be directly adverse to another client" or "there is substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]"

Although Mr. Sperry contends that Ms. Brundage and Ms. Talbert have taken the position that Corizon stopped them from rendering care and that Corizon alleges that the nurses should be liable, he does not point to any defense or factual allegation asserted in the pleadings to support this characterization. Rather, the Corizon defendants explain that they contend that the registered nurse defendants did not have the authority to decide any treatment plan for Mr. Sperry because

those decisions were outside the scope of their practice, not because Corizon prevented them from doing so. And Corizon states that it has not argued that the nurses should be held liable but rather that Corizon is not a "healthcare provider" subject to the Kansas Medical Malpractice Screening Panels Act. These positions do not come anywhere close to suggesting that Corizon's interests are directly adverse to the nurses' interests or that there is a substantial risk that defense counsel's representation would be materially limited by representing all codefendants.

### B. Mr. Sperry Lacks Standing

Generally, an opposing party does not have standing to seek disqualification of counsel based on a potential conflict among current clients. *See, e.g., Smith v. TFI Family Servs., Inc.*, No. 17-02235-JTM-GEB, 2018 WL 2926474, at *3 (D. Kan. June 8, 2018) (recognizing the general rule is that an opposing party has no standing to move for disqualification based on a conflict among the attorney's clients); *Hjersted Family Ltd. P'ship v. Hallauer*, No. 06-2229-CM-GLR, 2007 WL 2789829, at *4 (D. Kan. Sept. 21, 2007) (considering KRPC 1.7 and collecting cases reaching the same conclusion about standing). Some judges in this district have recognized "an exception to the rule that only clients have standing where the interests of the public are so greatly implicated that a third party should be entitled to raise any apparent conflicts of interest which may tend to undermine the validity of the proceedings." *Smith*, 2018 WL 2926474, at *3; *see also Yarn Processing*, 530 F.2d at 89 (suggesting a possible exception where the ethical violation was "manifest and glaring" or "open and obvious and confronted the court with a plain duty to act"). For example, the court has recognized an exception when the parties performed services for children in need of care placed in the state's custody. *See Smith*, 2018 WL 2926474, at *3.

As previously explained, there is no ethical violation here, much less a manifest or glaring one, and this case does not involve the interests of the public or a third party. Mr. Sperry does not

7

have standing to move to disqualify defense counsel on this basis. Because of this, and because there is no concurrent conflict of interest, the court denies his motions.

### III.     Motion to Set Aside Scheduling Order (ECF 93)

The court entered a scheduling order approximately five months ago on March 19, 2020, that Mr. Sperry contends violates various procedural rules. He requests that the court set aside the scheduling order. The court has wide latitude in controlling the orderly and efficient progression of a case, and it was certainly well within the court's discretion to issue a scheduling order—as is common practice in this district for prisoner cases that advance to the discovery stage. The authority Mr. Sperry relies on reflects that he misunderstands the applicable rules.

Mr. Sperry cites FED. R. CIV. P. 16(b)(1), D. KAN. RULE 9.1(k), and D. KAN. RULE 16.1(b) to argue that: (1) the court erred in issuing a scheduling order and (2) it should not have issued one without consulting the parties. But the court retains discretion over how to manage these types of cases. FED. R. CIV. P. 16(b) requires the court to enter scheduling orders in most civil cases except for categories of cases exempted by local rule. FED. R. CIV. P. 16(b)(1). This district's local rules exempt cases filed by pro se prisoners "*[u]nless the court orders otherwise* in a particular case[.]" D. KAN. RULE 16.1(b) (emphasis added). In other words, although a scheduling order is not mandatory in a case filed by a pro se prisoner, it is optional. Indeed, the local rules specify that while prisoner cases are exempted from the requirements of FED. R. CIV. P. 16(b) and certain other requirements regarding planning meetings and disclosures, "the court may impose any or all of these requirements necessary to effectively manage an action." D. KAN. RULE 9.1(k). Although Mr. Sperry relies on these local rules to argue that his case was exempted from the requirement that the court must issue a scheduling order, he overlooks that the rules allow the court to order otherwise—in other words, to issue a scheduling order—which the court did in this case. The

local rules give the court discretion whether to enter a scheduling order under FED. R. CIV. P. 16(b)(1). They do not prohibit the court from doing so.

Mr. Sperry also argues the court erred by issuing a scheduling order without consulting the parties. Mr. Sperry is correct that FED. R. CIV. P. 16(b) states that the court must issue a scheduling order after (1) receiving the report of parties' planning conference under FED. R. CIV. P. 26(f) or (2) after it consults with the parties at a scheduling conference. But Mr. Sperry takes this to mean that the court was required to hear from the parties before issuing a scheduling order. This is incorrect. As previously explained, the local rule exempts this action from the requirements of Fed. R. Civ. P. 16(b), which encompasses both scheduling orders and scheduling conferences. In its discretion, the court elected to issue a scheduling order but not hold a scheduling conference. Nothing in the plain language of the applicable procedural rules require the court to hold a scheduling conference when it elects to issue a scheduling order in cases that are otherwise exempt from the scheduling order requirement. To the contrary, D. KAN. RULE 9.1(k) states that the court can impose "any or all" of the otherwise exempted requirements to effectively manage a case.

Because this case proceeded to the discovery stage, the undersigned found that effective case management required a scheduling order to be issued, which was to Mr. Sperry's benefit. After all, the scheduling order allowed the parties to begin to participate in discovery, something they otherwise would not have been able to do unless every party stipulated. *See* FED. R. CIV. P. 26(d) (in exempted cases, parties may not seek discovery from any source unless authorized by the Federal Rules, by stipulation of the parties, or by court order). And the discovery period is key to providing Mr. Sperry with an opportunity to obtain evidence to support his claims.

But given the practical challenges of holding a scheduling conference with an incarcerated litigant, the undersigned did not find that a scheduling conference was necessary—a common

approach. *See, e.g., Brown v. Picknell*, No. 18-CV-1653, 2019 WL 4118788, at *1 (E.D. Wis. Aug. 29, 2019) (noting that the pro se prisoner case was exempt from a scheduling conference but that, in its discretion, the court issued a scheduling order to govern discovery). Holding scheduling conferences with incarcerated litigants places certain burdens on the facilities that house these individuals. In certain circumstances, the undersigned has found it appropriate and helpful to hold scheduling conferences with pro se prisoner litigants despite the burdens they place on the prison facilities. But Mr. Sperry's case is fairly straightforward, and the undersigned did not find that it was necessary here. Any party could have moved to amend the scheduling order, which itself provided that it could be modified with the court's consent and on a showing of good cause. (ECF 46, at 4.) *See also* FED. R. CIV. P. 16(b)(4) (same). But Mr. Sperry did not move to amend the scheduling order until the close of discovery, as discussed below. Because the court did not err in issuing the scheduling order or in declining to hold a scheduling conference, the court denies Mr. Sperry's motion to set aside the scheduling order on these grounds.

### IV.     Motion to Extend Discovery (ECF 93)

Mr. Sperry seeks an extension of the discovery deadline from August 20, 2020, to "until after the new year, at least." (ECF 93 ¶ 2.) A scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). To establish "good cause," the party seeking to modify a deadline must show that it "could not have been met with diligence." *Parker v. Cent. Kansas Med. Ctr.*, 178 F. Supp. 2d 1205, 1210 (D. Kan. 2001), *aff'd*, 57 F. App'x 401 (10th Cir. 2003); *see also* FED. R. CIV. P. 16(b)(4) advisory committee's note to the 1983 amendment (stating good cause exists when a schedule cannot be reasonably met despite the diligence of the party seeking the extension). The court is "afforded broad discretion in managing the pretrial schedule." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011).

Mr. Sperry's motion focuses on discovery at issue in his motion to compel as the reason for requiring additional time for discovery in general. But a ruling on the motion to compel would obviate the need for an extension of the discovery deadline because, if the court grants any portion of the motion, it will also order the timing of any future production. Beyond that, Mr. Sperry only generally references the need to serve additional interrogatories and to take depositions by written questions. (ECF 93 ¶ 8.) But even those references are premised on defendants' "refusal to relinquish the requested discovery material." (*Id.*) Thus, it appears that a forthcoming ruling on Mr. Sperry's pending motion to compel should address his concerns about the discovery he seeks, and therefore good cause does not support a wholesale extension of the discovery deadline.

## V.     Conclusion

It is certainly Mr. Sperry's right to actively litigate his case. But Mr. Sperry's motion to disqualify defense counsel and motion for recusal of the undersigned magistrate judge are frivolous. The undersigned will give Mr. Sperry some leeway because of his pro se status, but he has filed two motions that make serious and unsupported accusations of an ethical violation and bias. Worse yet, his tone lacks the decorum due in judicial proceedings: "Judge Mitchell might be clueless about the law, which would render her incompetent to hold the bench, or she purposely violated the law in an effort to prejudice Plaintiff." (ECF 90, at 3.) Mr. Sperry is free to take issue with court rulings or positions the Corizon defendants have taken in this litigation. But because of the court's very nature as an institution, the court "must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005). Those powers include the authority to strike filings and to sanction litigants. *See id.* (stating the court has authority to *sua sponte* strike the filings of pro se litigants under these circumstances and that it "will not allow liberal pleading

rules and pro se practice to be a vehicle for abusive documents"); *see also Waterman*, 2020 WL 4045199, at *4 (putting plaintiff on notice that filings with outrageous and unsubstantiated allegations would result in a contempt finding or the issuance of FED. R. CIV. P. 11 sanctions). Mr. Sperry is put on notice that future filings using disrespectful or insulting language are subject to being stricken and that the undersigned may recommend sanctions.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Recuse the Magistrate Judge (ECF 77) is denied.

**IT IS FURTHER ORDERED** that Mr. Sperry's Motions to Disqualify Defense Counsel (ECF 78 and 91) are denied.

**IT IS FURTHER ORDERED** that Mr. Sperry's Motion to Set Aside the Scheduling Order (ECF 88) is denied.

**IT IS FURTHER ORDERED** that Mr. Sperry's Motion to Extend Discovery (ECF 93) is denied.

**IT IS SO ORDERED.**

Dated August 27, 2020, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
