## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

      Plaintiff,

      v.                                                            Case No. 18-3119-EFM-ADM

CORIZON HEALTH, INC., *ET AL.*,

      Defendants,

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff Jeffrey J. Sperry's Motion to Compel Discovery. (ECF 94.) Defendants oppose the motion. As explained below, except for two court-narrowed requests for production of documents ("RFPs"), the remainder of Sperry's RFPs do not seek information that appears relevant on its face, and Sperry has not met his initial burden to establish its relevance. That said, the court agrees with Sperry that defendants cannot unilaterally decide to produce documents to the Kansas Department of Corrections ("KDOC") and arrange for Sperry to view the material absent a court order authorizing them to deviate from the Federal Rules of Civil Procedure's standard discovery procedures. Rather, defendants must move for a protective order, and the court will provide them with an opportunity to do so. For these reasons, explained in more detail below, Sperry's motion is granted in part and denied in part.

## I.      BACKGROUND

Sperry is an inmate housed in KDOC custody. He asserts claims against the company that provides medical care to KDOC inmates, Corizon Health, Inc., and two of its nurses, Rebecca Talbert, R.N., and Amber Brundege, R.N. Sperry alleges that defendants failed to notify him that he tested positive for Hepatitis-C for over a year and then failed to provide him with treatment for

Hepatitis-C.  He asserts a claim under 42 U.S.C. § 1983 for violations of his Eighth Amendment right to be free from cruel and unusual punishment and conspiracy to violate his civil rights.  (ECF 1, at 10.)  He also asserts Kansas state law claims for medical malpractice, outrage, battery, mistreatment of a confined person, breach of fiduciary duty, and negligence.  (*Id.*)

On May 8, 2020, Sperry served his First RFPs on Corizon, Talbert, and Brundege. Defendants served their initial responses and objections on June 8.  On June 22, Sperry filed a document memorializing his disagreement with some of the responses and objections.  (*See* ECF 69.)  In the interest of clarifying the record, the court construed the filing as a motion to compel and denied it without prejudice.  Among other things, the court stated the motion was premature in that the court had provided defendants with additional time to produce documents responsive to certain RFPs because Corizon was producing them subject to a protective order that had been recently entered at that time.  (ECF 73 ¶ 3.)  The court therefore granted Sperry leave to file a renewed motion to compel after he first attempted to confer with Corizon.  (*Id.*)

After the court entered a protective order, Corizon served supplemental and amended responses on June 30, including an additional limited production of documents responsive to RFP No. 6.  (ECF 100, at 1.)  According to Corizon, Sperry then followed up with a Golden Rule letter on August 4 regarding various issues, and Corizon responded in an August 12 letter that reiterated the basis for the objections.  (ECF 100 ¶¶ 5-6.)  Sperry filed this motion on August 20, asking the court to compel Corizon to respond in full to all of his RFPs; to do so within 48 hours or be subject to disciplinary sanctions; and to produce all discovery documents in hard copy.

Seven of Sperry's RFPs are at issue in his motion to compel.  For clarity, the RFPs can be grouped into three categories: (1) those seeking various contractual agreements and other organizational documents; (2) Corizon's policies and procedures; and (3) correspondence related

to Sperry and his healthcare.  Defendants initially lodged a relevance objection in response to the RFPs and continue to rely on that objection in response to the motion to compel.  In some instances, defendants also argue that the RFPs are not proportional.  And defendants contend that the motion is untimely.  The court will address each of these arguments below.

## I.      GOOD CAUSE EXISTS TO ALLOW THE MOTION

Before turning to the merits of Sperry's motion, the court must first determine whether it is timely.  Defendants argue the court should deny the motion as untimely because Sperry did not file it within 30 days of service of defendants' supplemental discovery responses.  However, this court's local rules provide that a motion to compel discovery must be "filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, *unless the court extends the time for filing such motion for good cause*."  D. KAN. RULE 37.1(b) (emphasis supplied).  In other words, a motion to compel must be filed within 30 days, or at a later period for good cause shown.  "Good cause exists if the moving party shows it acted diligently in attempting to resolve the discovery dispute at issue." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482, at *7 (D. Kan. Sept. 2, 2020).

Sperry did not file the motion within 30 days, but the court finds good cause to extend the deadline and consider the motion on its merits.  Considering delays associated with the mail, document review, and Sperry's status as an incarcerated pro se litigant, he acted with reasonable diligence in attempting to confer with defendants and in filing this motion when the parties could not resolve their disputes.  Although there appears to be some lag between the date defendants placed their supplemental responses in the mail June 30 to when defendants received Sperry's Golden Rule letter August 4, transmission through the mail and the prison facility where Sperry is housed would account for some delay.  Moreover, defendants explain that they produced

documents on a CD and arranged for the prison facility's legal team to allow Sperry to review them, a process that would have taken additional time.  (ECF 100 ¶ 4.)  Finally, Sperry attempted to file this motion sooner—on June 22—which the court denied without prejudice because defendants were making a supplemental production and because Sperry had not yet conferred with defendants.  Against this backdrop, it appears that Sperry was attempting to comply with the court's prior order and did so in a reasonable timeframe, all things considered.  For these reasons, the court finds good cause to extend the deadline for filing the motion to compel up to August 20. Therefore, Mr. Sperry's motion is timely under D. KAN. RULE 37.1(b).

## II.    LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery.  FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel.  FED. R. CIV. P. 37(a).  The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality

considerations.  *See Landry v. Swire Oilfield Servs.*, L.L.C., 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *see also Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); Fed. R. Civ. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006).  When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad."  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to

compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## III.   SPERRY HAS NOT ESTABLISHED THE RELEVANCE OF CONTRACTUAL AGREEMENTS & ORGANIZATIONAL DOCUMENTS (RFP Nos. 1-5)

Sperry's RFP Nos. 1-5 seek "official organization documents" for Corizon and related corporate entities; "the contract between Corizon and [related corporate entity] the Corporation Company;" and contracts or agreements between Corizon and various healthcare providers, including Talbert and Brundege.  (ECF 100-2, at 2-6.)  But because Sperry's claims concern defendants' care and treatment of Sperry's Hepatitis-C infection, it is not readily apparent how these types of business documents would bear on Sperry's claims or defendants' defenses. Consequently, Sperry bears the initial burden to establish relevance because these RFPs seek information that does not appear relevant on its face.

Sperry argues this information is relevant for three reasons.  First, he contends that these documents are relevant to establish the relationship between Corizon and the defendant nurses for the purposes of establishing agency so that Corizon would be vicarious liable for their acts.  But, as defendants point out, they agree that Corizon employed Talbert and Brundege and have represented as much in their answer and pending summary judgment motion.  (ECF 38 ¶¶ A21-A22; s*ee generally* ECF 84, 84-3, 84-4.)  Because Corizon does not contest that it employed Talbert and Brundege during the relevant period, information establishing the relationship between Corizon and the nurses is not relevant.

Second, Sperry argues that contracts between Corizon and the other medical personnel listed in the *Martinez* report would establish Corizon's agency relationship as to these individuals. But Sperry has not named these individuals as party defendants, and Corizon does not contest that it rendered medical care to Sperry.  To the contrary, Corizon's position on summary judgment is

that it rendered wholly appropriate care and treatment to Sperry.  (*See generally* ECF 84.)  Again, because this is not a disputed issue, documents aimed at establishing the matter are not relevant.

Third, Sperry argues that Corizon's medical license would establish whether it was operating healthcare facilities legally.  But the plain language of the RFPs does not encompass Corizon's medical license.  Regardless, defendants state that Corizon is a business entity that does not have a medical license.  (ECF 100, at 4.)  Sperry goes on to argue this information is relevant to whether Corizon is subject to a medical malpractice screening panel, an issue the court already decided that is not directly relevant to any claims or defenses in this case.

Because the information sought by RFP Nos. 1-5 does not appear relevant on its face and Sperry has not established the relevance of the requested material, the court sustains defendants' relevance objection as to these RFPs.  Defendants need not respond further.

## IV.   CORIZON'S POLICIES, PROCEDURES, OR GUIDELINES FOR TREATING HEPATITIS-C ARE RELEVANT BUT THE REST OF ITS POLICIES, PROCEDURES AND GUIDELINES ARE NOT (RFP No. 6)

RFP No. 6 seeks documents evidencing Corizon's policies, procedures, or guidelines for Corizon's healthcare providers working in Kansas prisons, including "all protocols for treating prisoners' medical and mental health issues, providing for treatments and experts outside the facility, and obtaining expensive treatments and surgeries."  (ECF 100-2, at 4.)  Defendants initially asserted multiple objections to this RFP, including objections that it was overly broad, unduly burdensome, sought irrelevant information, and was not proportional to the needs of the case.  Subject to those objections, Corizon produced portions of its General Health Services Policy and Procedure Manual to Sperry on a CD and made arrangements with prison officials to allow Sperry to view the documents.  Sperry moves to compel complete production in hardcopy format.

A.     **Threshold Showing of Relevance**

RFP No. 6 encompasses some facially relevant information, and Sperry has articulated relevance as to a limited category of these documents.  Indeed, defendants' production essentially concedes at least some level of relevance as to the documents produced.  Sperry argues this information is also relevant to determine whether Corizon's own policies constrained its healthcare providers in rendering appropriate medical care to Sperry, and the court agrees that Corizon's treatment protocols or other Hepatitis-C treatment guidelines appear relevant for the reason he states.  But the RFP is not limited to this material.  Rather, this information is but one example of "all manuals, books, et cetera" evidencing Corizon's policies and procedures "to be followed by doctors, nurses, and other healthcare workers employed by Corizon."  (*Id.*)  To that end, Sperry has made a threshold showing of relevance to the extent that this RFP seeks Corizon's protocols, policies, or guidelines regarding Hepatitis-C treatment that were in place during his own care and treatment.  But he has not met his initial burden to establish that the remainder of the material encompassed within the RFP is relevant.  For this reason, the court sustains in part defendants' relevance objection as it pertains to protocols, policies, or other than those bearing on Hepatitis-C treatment in place during the relevant time period.

B.     **Defendants' Relevance and Proportionality Objections**

Because Sperry has made a threshold showing of relevance as to Corizon's protocols, policies, or guidelines for Hepatitis-C treatment, defendants bear the burden to support their objections as to this narrowed scope of RFP No. 6.  In response to Sperry's motion to compel, defendants argue this RFP is not proportional because it seeks a large amount of irrelevant information.  For example, defendants state that Corizon's policies cover a wide variety of matters concerning correctional medicine that have no bearing on Sperry's claims.  Defendants also

encouraged Sperry to review the policy manual's table of contents and confer with them about any additional policies that Sperry believed were relevant to his claims.  The court agrees that RFP No. 6, as drafted, encompasses a large amount of information that would have no bearing on the parties' claims or defenses, but these objections are more properly addressed by narrowing this RFP's scope.

For example, defendants do not contend that Corizon's protocols, policies, or guidelines regarding Hepatitis-C treatment are not relevant.  Although defendants have produced some relevant portions of Corizon's General Health Services Policy and Procedure Manual, it is unclear whether they have other responsive documents pertaining to Hepatitis-C treatment that they have not produced.  Therefore, the court overrules defendants' objections as they pertain to documents relating to Hepatitis-C treatment and grants this aspect of Sperry's motion to compel.  Defendants must produce any additional policies, procedures, or guidelines to be followed by Corizon personnel relating to Hepatitis-C treatment that were in effect during the time period at issue in the complaint, defendants.  If no additional responsive documents exist, defendants must supplement their response to RFP No. 6 to state that they have produced all documents responsive to the narrowed scope of that RFP as set forth in this order.

## V.    DEFENDANTS CANNOT UNILATERALLY DEVIATE FROM DISCOVERY PROCEDURES WITHOUT COURT APPROVAL VIA A PROTECTIVE ORDER

The court next turns to the form of production.  Defendants previously produced documents responsive to RFP No. 6 to the KDOC and then arranged for Sperry to view the material on a CD. Sperry contends he was not provided with sufficient time to review the documents, and he therefore needs the documents produced to him in hardcopy form.  Defendants contend that they were required to use the procedure they did because KDOC policies limit items that may be sent directly

to an inmate.  However, defendants have not provided the court with copies of the applicable policies or quoted any relevant provisions.

Defendants also do not provide the court with any legal authority that supports their decision to produce responsive documents to the KDOC rather than to Sperry directly.  Indeed, FED. R. CIV. P. 34 contemplates production to the discovering party, not production to a nonparty that will facilitate review under its own specified conditions.  *See generally*, FED. R. CIV. P. 34(b)(2).  That said, the court retains discretion to control the course of discovery and to alter normal discovery procedures on a showing of good cause.  *See* FED. R. CIV. P. 26(c).  Certainly, KDOC policies or concerns about prison safety may represent good cause for a protective order that alters normal discovery procedures.  *See, e.g., Baker v. Moore*, No. 112CV00126LJOSAB, 2016 WL 796504, at *4 (E.D. Cal. Mar. 1, 2016) (relying on Rule 26(c) and noting that "[w]here otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur").  But, the court has not entered a protective order that authorizes the production mechanism that defendants have used.  Moreover, it is not readily apparent how Corizon policies and procedures concerning inmate care and treatment might pose a security risk to a prison facility.[1]

For these reasons, the court grants this aspect of Sperry's motion insofar as defendants are ordered to either: (1) produce all responsive documents to Sperry in hardcopy form within fourteen calendar days from the date of this order, including previously produced documents, or (2)

---

[1] The court previously granted defendants' motion for a protective order governing disclosure of certain sensitive documents.  (ECF 70.)  But defendants did not request—and the court did not authorize—documents to be produced in the manner defendants have used.

temporarily withhold the documents and file a motion for a protective order allowing their proposed procedure for production.  Any motion for a protective order must establish good cause and must specify the proposed terms of disclosure to Sperry by addressing the circumstances under which Sperry would have access to these documents, including any time limitations and whether he would be able to access the documents again later, if necessary.  If defendants move for a protective order, they need not produce responsive documents subject to the proposed protective order, but they must produce to Sperry any and all responsive documents that are not subject to the proposed protective order.

## VI.    CORRESPONDENCE AMONG HEALTHCARE PROVIDERS REGARDING SPERRY'S MEDICAL CONDITION IS RELEVANT, BUT AMONG OTHER ENTITIES OR CORIZON OFFICES IS NOT (RFP No. 7)

RFP No. 7 seeks all correspondence between prison and medical staff, various Corizon offices, and any other party related to Sperry and his healthcare.  Defendants initially lodged multiple objections to this RFP.  But, in response to the motion to compel, they argue only that this RFP seeks information that is not relevant.  Thus, the court understands that defendants are continuing to rely on their relevance objection.

### A.    Threshold Showing of Relevance

RFP No. 7 encompasses some information that appears relevant on its face, but most of the RFP seeks materials that do not appear relevant.  This case is about the care and treatment defendants provided or failed to provide.  So correspondence among Corizon healthcare providers during the time period at issue in the complaint about Sperry's Hepatitis-C infection could be relevant to showing what recommendations were made or the appropriate course of action that should be taken.  That limited category of information is relevant to Sperry's medical malpractice claim.

11

The relevance of the remainder of the documents sought by RFP No. 7 is not apparent, and Sperry has not established its relevance.  Sperry argues the additional information is relevant to determining "who was specifically liable for denying medical treatment."  But defendants accurately point out that the deadline for amending the pleadings has passed, and this case is now at the summary-judgment stage.  Consequently, even if this information were relevant for the stated purpose, correspondence with multiple offices, KDOC officials and "any other party or any combination of these parties" is not narrowly targeted to obtain information about who provided medical care to Sperry.  Rather, Sperry's own medical records would be the more appropriate avenue to determine which healthcare providers rendered medical care.  For these reasons, defendants' relevance objection is sustained as to documents other than correspondence among Corizon healthcare providers during the time period at issue in the complaint about Sperry's Hepatitis-C infection.

### B.    Defendants' Relevance Objection

The remainder of defendants' relevance objection is overruled as largely unsupported.  In response to the motion to compel, defendants' argument is essentially that RFP No. 7 is not relevant for the purpose Sperry states in his opening motion and that Sperry already has relevant portions of his medical records.  These arguments do not alter the court's conclusion that a narrowed category of documents sought by RFP No. 7 is facially relevant.  The fact that Sperry may have other discovery documents going to the same set of disputed facts does not render the RFP No. 7 objectionable absent a supported undue burden, proportionality, or similar objection.

For these reasons, the court sustains in part and overrules in part defendants' relevance objection to RFP No. 7.  To the extent defendants have correspondence among Corizon healthcare providers during the time period at issue in the complaint about Sperry's Hepatitis-C infection in

their possession, custody, or control, they must produce these documents to Sperry within fourteen calendar days from the date of this order.  If defendants believe this material should be subject to an additional protective order, they may temporarily withhold the documents pending a ruling on any forthcoming motion for a protective order.  If no additional responsive documents exist, defendants shall supplement their response to RFP No. 7 to state that they have produced all documents responsive to the narrowed scope of this RFP as outlined in this order.

## VII.   CONCLUSION

Sperry's motion to compel is granted as to the narrowed scope of RFP Nos. 6 and 7 as outlined in this order.  The court also grants Sperry's motion insofar as the court agrees that defendants may not deviate from normal discovery procedures for producing responsive documents absent a protective order.  The motion is denied in all other respects, including Sperry's request that defendants produce responsive documents within forty-eight hours from this order or be subject to disciplinary sanctions.

Within fourteen calendar days from the date of this order, defendants must either: (1) produce documents responsive to the narrowed scope of RFP Nos. 6 and 7—including documents previously produced to the KDOC—in hardcopy form to Sperry, or (2) temporarily withhold any such documents and file a motion for a protective order specifying special terms for disclosing highly sensitive documents.  If defendants move for a protective order, they need not produce responsive documents subject to the proposed protective order, but they must produce to Sperry any and all responsive documents that are not subject to their proposed protective order.

**IT IS THEREFORE ORDERED** that Plaintiff Jeffrey J. Sperry's Motion to Compel Discovery (ECF 94) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated September 22, 2020, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge