## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEFFREY J. SPERRY,

*Plaintiff,*

vs.

Case No. 5:18-CV-03119-EFM-ADM

CORIZON HEALTH, INC. *et al.*,

*Defendants.*

## MEMORANDUM AND ORDER

Proceeding pro se, Plaintiff Jeffrey J. Sperry filed this suit alleging that Corizon Health, Inc. and its two employees, Rebecca Talbert and Amber Brundege, (the "Corizon Defendants") failed to notify him that he had tested positive for hepatitis C for over a year and then failed to provide him with treatment to cure the infection.  He claims this violated his right to be free from cruel and unusual punishment under the Eighth Amendment and constituted a conspiracy to violate his civil rights.  In addition, he brings state law claims of medical malpractice, outrageous conduct, battery, mistreatment of a confined person, breach of fiduciary duty, and negligence.

Before the Court is Plaintiff's Objection to Order of Magistrate Judge Denying Motion to Appoint Counsel (Doc. 58), Plaintiff's Objection to Order of Magistrate Judge Denying Motion to Reconsider Out of Time (Doc. 59), the Corizon Defendants' Motion to Dismiss (Doc. 76), and the Corizon Defendants' Motion for Summary Judgment (Doc. 83).

# I.     Factual and Procedural Background

Plaintiff has been an inmate in the custody of the Kansas Department of Corrections ("KDOC") since April 1997 and is currently housed at the El Dorado Correctional Facility.  In 2016, Plaintiff brought suit against twenty-four defendants associated with the KDOC, alleging various constitutional and state law violations relating to his treatment in prison.[1]  One year later, Plaintiff filed an amended complaint which included fourteen counts against the same twenty-four defendants.  Finding that Plaintiff had not pleaded a transaction or occurrence that presented questions of law or fact common to all defendants, the Court severed Plaintiff's action into multiple suits, including this one.[2]  The severed claims comprising this action stem from Plaintiff's allegations that KDOC employees and employees of Corizon Health, Inc.—a Tennessee corporation contracted with the KDOC to provide health care services to inmates—failed to notify him that he had tested positive for hepatitis C for over a year, and then failed to provide him with treatment to cure the infection.

Plaintiff alleges a violation of his right to be free from cruel and unusual punishment under the Eighth Amendment and conspiracy to violate his civil rights.  He also brings state law claims of medical malpractice, outrageous conduct, battery, mistreatment of a confined person, breach of fiduciary duty, and negligence.  Earlier this year, the KDOC defendants were dismissed from the action, leaving only the Corizon Defendants.  The Corizon Defendants now move for dismissal of Plaintiff's claims for conspiracy to violate civil rights, outrageous conduct, battery, mistreatment

---

[1] *Sperry v. Wildermuth*, 2018 WL 623607, at *1–2 (D. Kan. 2018).

[2] *Sperry v. Wildermuth*, 2018 WL 2134078, at *2 (D. Kan. 2018).

of a confined person, and breach of fiduciary duty.  They also move for summary judgment as to Plaintiff's claims for medical malpractice and negligence.

The facts as presented by Plaintiff are as follows.  In June 2014, a routine blood test by healthcare staff at Lansing Correctional Facility revealed that Plaintiff tested positive for hepatitis C.  For unknown reasons, however, Plaintiff was not notified of the positive result until June or July of 2015.  At that time, Plaintiff demanded that he be given a drug treatment that would cure his hepatitis C.  Plaintiff was informed by Corizon employee, Rebecca Talbert, a registered nurse, that he would be placed on chronic care to monitor his infection, but that he would not be given the treatment unless he "gets close to dying" from the hepatitis C infection.  Plaintiff then filed grievances and injury claim forms with the KDOC demanding that he receive treatment for his hepatitis C.  In 2016, Plaintiff was transferred from Lansing Correctional Facility to the El Dorado Correctional Facility.  At that time, he requested that the El Dorado Correctional Facility Infection Control Coordinator, Amber Brundege, a registered nurse, get him the treatment.  Plaintiff alleges he was again denied the treatment.  Plaintiff alleges $1,000,000 in damages as a result of irreparable damage caused by the Corizon Defendants' failure to treat his hepatitis C.

## II.      Legal Standard

Because Plaintiff appears pro se in this case, the Court must liberally construe his pleadings.[3]  If a court can reasonably read a pro se complaint in such a way that it could state a claim on which the plaintiff could prevail, it should do so despite "failure to cite proper legal authority . . . confusion of various legal theories . . . or [Plaintiff's] unfamiliarity with pleading

---

[3] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

requirements."[4] The Court, however, is not an advocate for the pro se litigant.[5] "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[6]

## A. Objection to Magistrate Judge's Non-Dispositive Order

Upon objection to a magistrate judge's order on a non-dispositive matter, the district court may modify or set aside any portion of the order that it finds to be "clearly erroneous or contrary to law."[7] To be clearly erroneous, a decision must strike the Court as "more than possibly or even probably wrong."[8] Thus, the Court is required to affirm the magistrate judge's order unless the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed."[9]

## B. Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[10] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is

---

[4] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[5] *Id.*

[6] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (citation omitted).

[7] 28 U.S.C. § 636(b)(1)(A); *see also First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (citation omitted); Fed. R. Civ. P. 72(a).

[8] *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (citation omitted).

[9] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[10] Fed. R. Civ. P. 12(b)(6).

plausible on its face.' "[11]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[13]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[14]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[15]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' " [16]

Additionally, Local Rule 7.4(b) provides that if a response to a motion is not filed within twenty-one (21) days, the Court will consider and decide the motion as an uncontested motion. Ordinarily, the Court will grant the motion without further notice.  The Tenth Circuit, however, has directed that a district court may not grant a motion to dismiss or a motion for summary judgment based solely on the plaintiff's failure to respond.[17]  Instead, it "must still examine the

---

[11] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[13] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[14] *Iqbal*, 556 U.S. at 678–79.

[15] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[16] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[17] *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003).

allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."[18]   Thus, the Court will conduct a full analysis of Plaintiff's claim, despite Plaintiff's failure to respond to the Corizon Defendants' motion to dismiss.

## C.     Summary Judgment

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[20]   The movant bears the initial burden of proof and must show the lack of evidence on the nonmovant's claim.[21]   If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead set forth specific facts showing a genuine issue for trial as to those matters for which it carries the burden of proof.[22]   These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone cannot survive a motion for summary judgment.[23]   The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[24]

---

[18] *Id.*

[19] Fed. R. Civ. P. 56(a).

[20] *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citations omitted).

[21] *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citations omitted).

[22] *Id.* (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

[23] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[24] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

### III.    Analysis

**A.  Objection to the Magistrate Judge's Denial of Motion to Appoint Counsel**

On April 28, 2020, Plaintiff filed a Motion for the Appointment of Counsel (Doc. 52).  The next day, Magistrate Judge Mitchell denied the motion in a three-page order outlining her reasons for denial (Doc. 54).  On review, the Court concludes that the Magistrate Judge's conclusions were adequate.  As correctly outlined by Magistrate Judge Mitchell, there is no constitutional right to appointment of counsel in a civil case,[25] and the decision whether to appoint counsel to an indigent defendant in a civil matter lies in the discretion of the district court.[26]  Further, "[t]he burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."[27]

In his initial motion, Plaintiff did not address the merits of his claim, but, rather, asserted that his claims were not frivolous and that he does not have the time to litigate his claim without the assistance of an attorney.  Plaintiff now objects to the Magistrate Judge's denial of his motion, arguing that Magistrate Judge Mitchell's discretionary conclusions were wrong.  The Court disagrees.  In her order, Magistrate Judge Mitchell properly considered (1) the merits of Plaintiff's claims; (2) "the nature and complexity of the factual and legal issues"; and (3) Plaintiff's "ability to investigate the facts and present his claims."[28]

---

[25] *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989) (citation omitted); *see also Whittington v. Maes*, 655 F. App'x 691, 698 (10th Cir. 2016).

[26] *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

[27] *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).

[28] *Hill*, 393 F.3d at 1115 (citations omitted).

First, the Court agrees that Plaintiff's claims do not appear particularly meritorious. Although Plaintiff claims $1,000,000.00 in damages, he does not allege any specific harm, and it appears from the *Martinez* report that Plaintiff has now been given the medical treatment which he asserted was withheld from him.  Next, although Plaintiff's case is somewhat factually complex, in that it involves a medical malpractice claim requiring expert testimony, the Court agrees with the Magistrate Judge's conclusion that the legal issues herein are not overly complex and that Plaintiff has demonstrated that he is capable of adequately presenting his claims.  In his complaint, Plaintiff notes that he has helped "hundreds of inmates process legal challenges to violations of their civil rights," and has litigated "[n]umerous . . . violations of his own civil rights."[29] Moreover, Plaintiff has filed many motions in this case—often multiple motions within a period of a few days.  In those motions, Plaintiff cites relevant law and coherently sets forth his arguments. Thus, Plaintiff has demonstrated that he can sufficiently litigate his case.  On balance, appointment of counsel is not warranted here, and the Court will not reverse Magistrate Judge Mitchell's order denying Plaintiff's Motion for Appointment of Counsel.

## B.  Motion to Dismiss

### 1.  § 1983 Claim

Plaintiff first asserts a claim for violation of his Eighth Amendment right against cruel and unusual punishments based on the Corizon Defendants' alleged failure to treat his hepatitis C. Plaintiffs may bring federal civil causes of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution" under Section 1983 of the U.S. Code.[30]  Under the Eighth

---

[29] Pl.'s Compl., Doc. 1, at p. 10

[30] *Becker v. Kroll*, 494 F.3d 904, 913 (10th Cir. 2007) (citing 42 U.S.C. § 1983)).  Although plaintiffs in § 1983 cases must also allege that the "deprivation was committed under color of state law," the Corizon Defendants do not dispute that they were acting under color of state law.  *See Barnett v. Hall, Estill, Hardwick, Gable, Golden &*

Amendment, the state has an "obligation to provide medical care for those whom it is punishing by incarceration."[31]  A § 1983 claim cannot be based on mere negligence, however.[32]  Rather, "prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.' "[33]  The Eighth Amendment's ban on cruel and unusual punishment is made applicable to the States through the Fourteenth Amendment.[34]

The deliberate indifference standard includes both an objective and subjective component.[35]  To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."[36]  "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[37]

---

*Nelson, P.C.*, 956 F.3d 1228, 1235 (10th Cir. 2020) (quoting *Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).  Moreover, the U.S. Supreme Court has previously held that a contract prison physician "worked under color of state law for purposes of § 1983." *West v. Atkins*, 487 U.S. 42, 54 (1988).  Thus, the Court will presume for purposes of this motion that the Corizon Defendants were acting under color of state law in their capacity as healthcare providers at the KDOC facilities.

[31] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *see Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) ("Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act deliberately and indifferently to serious medical needs of prisoners in their custody.").

[32] *Jones v. Salt Lake Cty.*, 503 F.3d 1147, 1163 (10th Cir. 2007) (citation omitted).

[33] *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 104).

[34] *See Estelle*, 429 U.S. at 101 (citing *Robinson v. California*, 370 U.S. 660 (1962)).

[35] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[36] *Self*, 439 F.3d at 1230 (quoting *Farmer*, 511 U.S. at 834).

[37] *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (quotation marks and citation omitted).

"[U]nder the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.' "[38]  An "inadvertent failure to provide adequate medical care" does not give rise to a claim under 42 U.S.C. § 1983; nor do allegations regarding mere negligence or malpractice give rise to such a claim.[39]  The U.S. Supreme Court has "made clear" that "a prison official cannot be liable 'unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' "[40]

Thus, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."[41]  Simply put, "no claim of constitutional dimension is stated where a prisoner challenges only matters of medical judgment or otherwise expresses a mere difference of opinion concerning the appropriate course of treatment."[42]  Furthermore, "a delay in providing medical care does not violate the Eighth Amendment unless there has been deliberate indifference *resulting in substantial harm*."[43]

Here, Plaintiff alleges that he was not told of his hepatitis C diagnosis until approximately one year after his initial blood test indicating a positive result and that he was denied drug treatment that could cure his hepatitis C.  He further asserts that he was told by Defendant Talbert that while he would be placed on chronic care to monitor his infection, he would not be given drug treatment

---

[38] *Self*, 439 F.3d at 1230–31 (quoting *Farmer*, 511 U.S. at 834).

[39] *Id*. at 1230.

[40] *Id*. at 1231 (quoting *Farmer*, 511 U.S. at 837).

[41] *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citations omitted).

[42] *Smith v. Harvey Cty. Jail*, 889 F. Supp. 426, 430 (D. Kan. 1995) (citing *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992)).

[43] *Id.* (citing *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis added)).

unless he "gets close to dying" from the hepatitis C infection.  He also alleges that upon arrival at the El Dorado Correctional Facility, Defendant Brundege denied his request for drug treatment. Plaintiff does not allege, however, any specific harm as a result of the delay.

Tenth Circuit precedent is clear that where a delay in medical care does not result in "substantial harm," there can be no Eighth Amendment violation.[44]  Thus, by failing to allege any harm as a result of the failure to provide drug treatment, Plaintiff has failed to state a § 1983 claim for violation of the Eighth Amendment.  Moreover, Plaintiff failed to allege the subjective component of his claim as he does not assert that Defendants Talbert or Brundege knew of and disregarded an excessive risk to his safety in failing to provide him drug treatment.[45]  Plaintiff has therefore failed to state a claim against Defendants Talbert or Brundege for violation of his Eighth Amendment right against cruel and unusual punishments.  Finally, because Plaintiff has failed to allege an underlying constitutional violation by a Corizon Health employee, Plaintiff's § 1983 claim against Corizon Health must also fail.[46]

### 2. *Conspiracy to Violate Civil Rights*

Plaintiff also asserts a claim of conspiracy to violate civil rights, although it is unclear under which statute Plaintiff intends to assert his claim.  "[A] § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving another of equal protection of the laws or equal privilege and immunities under the laws."[47]  Critically, however, claims under

---

[44] *Id.*

[45] *Self*, 439 F.3d at 1231.

[46] Although a corporation may be liable under § 1983 if its policy is the "moving force" which causes an employee to violate a person's constitutional rights, Plaintiff has not alleged that any Corizon employee violated his constitutional rights.  *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1215–16 (10th Cir. 2003).

[47] *Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

§ 1985(3) may only be brought where the conspiracy was "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.' "[48] Construing the pleadings liberally, the Court cannot conclude that Plaintiff intended to allege that denial of the hepatitis C drug treatment was based on some discriminatory animus.   Thus, Plaintiff has not stated a claim under § 1985(3).

Next, "to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading proof of one without the other will be insufficient."[49]  To sufficiently plead the conspiracy element of a § 1983 claim, a plaintiff must allege "at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."[50]  Here, Plaintiff alleges, "[t]he fact that the [KDOC] defendants, who have authority to enforce the contract and make Corizon and its employees give plaintiff his treatment, refuse to so [sic] means that they are in a conspiracy with Corizon to violate plaintiff's civil rights."[51]  The Court concludes that mere allegation that the KDOC Defendants did not force the Corizon Defendants to provide Plaintiff with his treatment plan of choice fails to raise the inference that the Corizon Defendants conspired with the KDOC Defendants, or each other, to violate Plaintiff's

---

[48] *D'Addabbo v. United States*, 316 F. App'x 722, 727 (10th Cir. 2008) (quoting *Tilton*, 6 F.3d at 686); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (stating that a plaintiff alleging § 1985(3) claim "must show, inter alia, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action") (alteration in original).

[49] *Dixon*, 898 F.2d at 1449 (citations omitted).

[50] *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010) (citations omitted).

[51] Compl. ¶ 10.

rights.[52]  Moreover, Plaintiff has not alleged an actual deprivation of his rights.[53]  As addressed above, mere disagreement regarding "a prescribed course of treatment does not state a constitutional violation."[54]  Thus, Plaintiff has failed to sufficiently allege conspiracy under § 1983.

### 3.  *Outrageous Conduct*

Plaintiff next asserts a claim for "the tort of outrageous conduct."  The Court assumes Plaintiff refers to the Kansas tort of outrage, also known as intentional infliction of emotional distress.[55]  Kansas courts have set a high standard for this tort.[56]  To sufficiently plead this claim, a plaintiff must allege: "(1) [t]he conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[57]  Here, Plaintiff's pleading is insufficient.  Although Plaintiff was not given his treatment of choice for his hepatitis C, he was placed on chronic care so that his

---

[52] *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (quoting *Twombly*, 550 U.S. at 556).

[53] *Dixon*, 898 F.2d at 1449.

[54] *Perkins*, 165 F.3d at 811.

[55] *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 278 Kan. 339, 97 P.3d 492, 494 (2004).

[56] *Ginwright v. Unified Sch. Dist. No. 457*, 756 F. Supp. 1458, 1476 (D. Kan. 1991).

[57] *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 229 P.3d 389, 394 (2010) (citing *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1029 (1991)).

infection could be monitored.  This Court concludes as a matter of law that a health care provider's decision to monitor infection prior to drug treatment is not extreme and outrageous conduct.[58]

Even assuming for purposes of this motion that the Corizon employees' statements to Plaintiff that he would not receive drug treatment until he was "close to dying" or until "permanent damage was done" constitute extreme and outrageous conduct done intentionally or recklessly, Plaintiff does not assert emotional distress as a result of these statements.  Without an allegation of severe emotional distress resulting from the alleged conduct, Plaintiff's claim for the tort of outrage cannot survive the Corizon Defendants' motion to dismiss.

### 4.  Battery

Plaintiff's claim for battery is similarly deficient.  In Kansas, "[b]attery is 'the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact that is harmful or offensive.' "[59]  Plaintiff has failed to make any allegations that any of the Corizon Defendants physically touched him, let alone touched him with an intent to bring about harmful or offensive contact.  Plaintiff's claim for battery therefore must fail.

### 5.  Mistreatment of a Confined Person

Plaintiff next alleges mistreatment of a confined person.  As this Court has noted in a prior ruling, the mistreatment of a confined person is a crime under Kansas law, not a tort.[60]  Because

---

[58] *See Taiwo*, 822 P.2d at 1029 ("[L]iability may only be found in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.  It was further said liability may be found . . . in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, 'Outrageous!' ") (citation omitted).

[59] *McElhaney v. Thomas*, 307 Kan. 45, 405 P.3d 1214, 1219 (2017) (citations and alteration omitted).

[60] Doc. 42; *see also* K.S.A. 21-5416.

-14-

Plaintiff cannot maintain a private cause of action for violation of a state criminal statute, Plaintiff's mistreatment of a confined person claim must also be dismissed.[61]

### 6. *Breach of Fiduciary Duty*

To state a claim for breach of fiduciary duty, plaintiffs must adequately allege the "existence of a duty, breach of that duty, and damages resulting from the breach."[62]  Plaintiff's complaint does not specifically allege any of the above elements.  Plaintiff makes only the conclusory allegation that the Corizon Defendants "in failing to notify plaintiff of his Hepatitis-C infection, and then failing to give him the treatment to cure the infection . . . is [a] . . . breach of fiduciary duty."[63]

"A fiduciary relationship exists where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."[64] "Two types of fiduciary relationships exist: (1) those specifically created by contract such as principal and agent and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions."[65]  "Examples of a fiduciary relationship include the acting of one party for another, the exercising of influence by one party over another, the reposing

---

[61] *Burnett v. Kansas*, 2011 WL 2531175, at *3 n. 3 (D. Kan. 2011) ("Section 1983 provides relief for violations of federal law by individuals acting under color of state law, but provides no basis for relief for alleged violations of state law. . . . Additionally, K.S.A. 21–3425 makes the mistreatment of a confined person a class A person misdemeanor.  No private cause of action in a state or federal court is established by this state criminal statute.") (citing *Jones v. City & Cty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988)).

[62] *Schneider v. Kan. Sec. Comm'r*, 54 Kan. App. 2d 122, 397 P.3d 1227, 1247 (2017) (citation omitted).

[63] Compl. at 10.

[64] *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 301 P.3d 772, 785 (2013) (quoting *Reebles, Inc. v. Bank of Am., N.A.*, 29 Kan. App. 2d 205, 25 P.3d 871, 874 (2001)).

[65] *Id.* (citing *Wilson v. Wilson*, 37 Kan. App. 2d 564, 154 P.3d 1136, 1143 (2007)).

of confidence by one party in another, the inequality of the parties, and the dependence of one party on another."[66]

Kansas courts have recognized a fiduciary duty owed by physicians to patients, applying the duty in the context of a physician's "obligation to make a full and frank disclosure to the patient of all pertinent facts related to his illness."[67]  In the prison context, although Kansas courts have recognized that prison officials owe a duty to provide prisoners "the basic necessities of civilized existence, including the right to adequate food, light, clothing, medical care and treatment, sanitary facilities, reasonable opportunity for physical exercise, and protection against physical or psychological abuse," they have not characterized the obligation as a fiduciary one.[68]  Further, in Kansas, "[a] confidential relationship is not presumed, and the burden of proving such a relationship existed rests upon the party asserting its existence."[69]  Thus, "[a] party may not 'unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.' "[70]

Here, the Court will assume for purposes of this motion that the Corizon Defendants owe Plaintiff a fiduciary duty.  But, even construing Plaintiff's Complaint liberally to assume he intended to allege that the Corizon Defendants violated their "obligation to make a full and frank

---

[66] *Id.* (citing *Morrison v. Watkins*, 20 Kan. App. 2d 411, 889 P.2d 140, 149 (1995)).

[67] *Natanson v. Kline*, 186 Kan. 393, 350 P.2d 1093, 1101–02 (1960); *see also Esquivel v. Watters*, 2007 WL 1041762, at *4 (Kan. Ct. App. 2007), *rev'd on other grounds*, 286 Kan. 292, 183 P.3d 847.

[68] *Elliott v. Buckley*, 2008 WL 4916390, at *4 (Kan. Ct. App. 2008) (quoting *Levier v. State*, 209 Kan. 442, 497 P.2d 265, 271 (1972)).

[69] *Dana*, 301 P.3d at 785 (quoting *Kampschroeder v. Kampschroeder*, 20 Kan. App. 2d 361, 887 P.2d 1152, 1156 (1995)).

[70] *Id.* (quoting *Linden Place, LLC v. Stanley Bank*, 38 Kan. App. 2d 504, 167 P.3d 374, 378 (2007)).

disclosure to the patient of all pertinent facts related to his illness,"[71] Plaintiff has failed to assert a factual basis as to how any named defendant breached that duty.  In his Complaint, Plaintiff asserted only that an unidentified nurse informed him of his diagnosis and of the delay in notifying him of the diagnosis.  Although Plaintiff alleges that Defendant Brundege was the Infection Control Coordinator at his correctional facility at the time of his missed diagnosis and that Defendant Talbert told Defendant he would not be given his requested treatment, Plaintiff has failed to allege that either was responsible for the delay in informing him of his hepatitis C diagnosis.  Thus, Plaintiff has not alleged a breach by Defendant Brundege or Defendant Talbert.

Further, Plaintiff's attempt to hold Corizon Health vicariously liable for breach of fiduciary duty must also fail.  Plaintiff has not alleged that any Corizon Health employee failed "to make a full and frank disclosure . . . of all pertinent facts" related to his hepatitis C diagnosis.  Without an allegation of an underlying breach by a Corizon employee, there is no basis for which Corizon could be found vicariously liable.[72]  Thus, the Court grants the Corizon Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty as to all three Corizon Defendants.

**C.  Summary Judgment**

The Corizon Defendants now move for summary judgment on Plaintiff's remaining state law claims for medical malpractice and negligence.  In Kansas, in order to establish a claim for medical malpractice, a plaintiff must show:

> (1) The health care provider owes the patient a duty of care and was required to meet or exceed a certain standard of care to protect the patient from injury; (2) the health care provider breached this duty or deviated from the applicable standard of

---

[71] *Natanson*, 350 P.2d at 1101–02.

[72] *Long v. Houser*, 57 Kan. App. 2d 675, 456 P.3d 549, 552 (2020) (citations omitted).

care; (3) the patient was injured; and (4) the injury proximately resulted from the health care provider's breach of the standard of care.[73]

Thus, to succeed on summary judgment, the Corizon Defendants must show a lack of evidence on Plaintiff's claim.  The Corizon Defendants assert that summary judgment is appropriate because Plaintiff has not designated an expert to testify regarding the standard of care and causation, and thus will be unable to meet his burden of production at trial.

In support of their motion, the Corizon Defendants detail Plaintiff's medical treatment while in the custody of the KDOC, citing to KDOC medical records, affidavit testimony by Lisbeth Leiber—an advanced registered nurse practitioner employed by Corizon—, and Federal Bureau of Prisons guidelines regarding the treatment of hepatitis C.  The provided exhibits suggest that the progression of Plaintiff's hepatitis C was regularly monitored by Corizon employees from late 2015 through 2017 and that Plaintiff's labwork and clinical assessments indicated that Plaintiff was not likely to be suffering complications as a result of his hepatitis C during that time.  In August 2017, however, Plaintiff was assessed to be experiencing some level of cirrhosis of the liver and spleen enlargement, although the Corizon Defendants do not identify possible sources of these issues.  In November 2017, Plaintiff began undergoing antiviral treatment for his hepatitis C, and by January 2018, Plaintiff's labwork improved.  In May 2018, Plaintiff's liver function test was within normal limits, and an August 2018 clinical examination of Plaintiff revealed no abdominal tenderness, hepatic enlargement, or spleen enlargement.

In response, Plaintiff does not dispute the Corizon Defendants' characterization of his course of treatment.  Rather, he takes issue with Leiber's interpretation of the medical records and

---

[73] *Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 290 Kan. 406, 228 P.3d 1048, 1060 (2010) (citations omitted).

her qualifications to serve as an expert witness.[74]   He further argues that the medical records demonstrate that Corizon breached the standard of care by failing to timely provide him with antiviral treatment for his hepatitis C, and that this alleged breach caused him permanent damage. Thus, viewing the facts in the light most favorable to Plaintiff, the unresolved issues material to this case are whether the delay in antiviral treatment constituted a breach of the standard of care owed by Corizon and whether the delay in treatment caused Plaintiff's symptoms.

Generally, in Kansas, expert testimony is required in medical malpractice cases on the issues of standard of care, deviation from the standard of care, and causation.[75]   This is true regardless of whether a medical claim is classified as ordinary negligence or medical malpractice.[76] Thus, the Corizon Defendants argue that because Plaintiff has failed to offer expert testimony to support his medical malpractice and negligence claims, Plaintiff cannot meet his burden of production, and summary judgment is appropriate.

In his response brief, Plaintiff largely fails to address any of the Corizon Defendants' arguments or relevant law.  Instead, Plaintiff proffers five arguments in support of his assertion that summary judgment is inappropriate: (1) that the scheduling order in the case is invalid, and thus, Plaintiff is not yet required to name an expert; (2) that the Magistrate Judge's order denying

---

[74] Plaintiff's argument that Nurse Leiber is unqualified to serve as an expert because she is not a doctor and because she is not an expert on hepatitis C is without merit.  Plaintiff cites no authority for the proposition that a nurse practitioner is not qualified to render an expert opinion.  Likewise, the Court is unable to locate any such authority. Further, Leiber states that in the course of her education, training, and experience in correctional-based health care settings, she has "spent an extensive amount of time learning effective techniques in providing treatment to prison inmates" and that her opinions are "in accordance with standard health professional practice" and stated "within a reasonable degree of certainty." Aff. of Lisbeth Leiber, APRN, Doc. 24-1.  Thus, the Court will not disregard her testimony.

[75] *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 756 P.2d 416, 420 (1988) (citing *Webb v. Lungstrum*, 223 Kan. 487, 575 P.2d 22, 25 (1978)).

[76] *Tudor v. Wheatland Nursing L.L.C.*, 42 Kan. App. 2d 624, 214 P.3d 1217, 1221–22 (2009) (citation omitted).

Plaintiff's request for a medical malpractice screening panel was invalid; (3) that an expert witness is not necessary as the issues are within the common knowledge of laypersons; (4) that Plaintiff will subpoena the doctors in charge of his treatment to testify at trial as expert witnesses on his behalf; and (5) that Plaintiff is in the process of locating an expert witness to testify in his case, and that he will present such witness by trial.[77]  Plaintiff's first and second arguments are not properly raised at summary judgment, and thus the Court will disregard them.[78]

Next, although there is an exception to the rule requiring expert testimony in medical malpractice cases when "the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience," the Court concludes that the exception is not applicable here.[79]  The "common knowledge exception applies if what is alleged to have occurred . . . is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally."[80]  The issue of whether the common law exception applies is a question of law,[81] and Kansas courts have applied the exception sparingly.[82]

---

[77] Pl.'s Resp. in Opp'n, Doc. 103.

[78] Even assuming that Plaintiff's motion for a medical malpractice screening panel was improperly denied, that denial has no bearing on Plaintiff's ability to obtain and produce expert testimony in this case.

[79] *Bacon*, 756 P.2d at 420 (citations omitted).

[80] *Hare v. Wendler*, 263 Kan. 434, 949 P.2d 1141, 1147 (1997) (quoting *Webb*, 575 P.2d at 25).

[81] *Perkins v. Susan B. Allen Mem'l Hosp.*, 36 Kan. App. 2d 885, 146 P.3d 1102, 1105 (2006) (citation omitted).

[82] *Cooper v. Ciccarelli*, 2009 WL 539911, at *4 (D. Kan. 2009) (citations omitted).

Citing *Bryan v. Shah*,[83] Plaintiff argues that the common knowledge exception is applicable because "[l]aypersons would readily know that failure to treat a debilitating and deadly disease in any manner for 3 ½ years constitutes malpractice."[84]   But in *Bryan*, the issue was whether health-care personnel were negligent in failing to order tests prescribed by a physician.[85]   The court did not hold that jurors could through common knowledge determine the proper course of treatment for a particular disease, but held that "an average juror would know . . . whether or not an alleged failure to fulfill or complete prescriptions, orders and the like of the treating doctor deviates from the standard of care."[86]   Further, the court specifically held that it would not "suggest that a layperson would know how often blood work is required" and cited a Third Circuit Court of Appeals case holding that common knowledge could not guide a layperson in determining "how often an insulin-dependent diabetic needed insulin."[87]   Similarly, here, without expert testimony, a layperson cannot determine the proper course of treatment for hepatitis C.

Next, Plaintiff's argument that he may simply elicit testimony from Defendants' expert witnesses at trial to support his case cannot defeat summary judgment.   Although Plaintiff cites a United States District Court for the Southern District of Ohio case for the proposition that parties need not necessarily have their *own* expert witness to establish causation in a medical malpractice case, the facts of that case are distinguishable from those here.[88]   There, the non-moving party

---

[83] 351 F. Supp. 2d 295 (D.N.J. 2005).

[84] Pl.'s Resp. in Opp'n, Doc. 103, p. 11.

[85] *Bryan*, 351 F. Supp. 2d at 300.

[86] *Id.* at 301–02.

[87] *Id.* at 302 n. 11 (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003)).

[88] *Reber v. Lab. Corp. of Am.*, 2017 WL 3888351 (S.D. Ohio 2017)

contended that it could meet its burden of proof through *evidence already produced* by the moving party, including admissions from the moving party's expert witnesses.[89]  Here, Plaintiff has cited no such testimony.  Instead, Plaintiff merely presents the hope that he will be able to elicit testimony from Defendants' witnesses to prove causation at trial, despite having failed to gather such information in the discovery stage of this case.  This is insufficient as Plaintiff must set forth specific facts to show a genuine issue for trial as to those matters for which he carries the burden of proof.[90]  Thus, Plaintiff's assertion that he intends to elicit testimony that may create a genuine issue of fact at trial cannot defeat the Corizon Defendants' motion for summary judgment.[91]

Finally, Plaintiff asserts that the Corizon Defendants' evidence does not support judgment as a matter of law, regardless of whether he has produced expert testimony.  He argues that because the Corizon Defendants have failed to present evidence to "contradict Corizon's own guidelines or the medical reports issued by the doctors who examined Plaintiff," summary judgment is inappropriate.  But, Plaintiff's disagreement with Leiber's interpretation of his medical records does not demonstrate that the Corizon Defendants' have failed to meet their burden, nor establish the validity of Plaintiff's claims.  Further, the facts here are distinguishable from those in Plaintiff's cited case law.  In *Fitzgerald v. Corr. Corp. of Am.*,[92] the plaintiff's claim survived summary judgment because the moving party produced only a conclusory affidavit stating that the

---

[89] *Id.* at *18.

[90] *Kannady*, 590 F.3d at 1169 (citation omitted).

[91] *Adler*, 144 F.3d at 671 ("If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.") (citations omitted).

[92] 403 F.3d 1134 (10th Cir. 2005).

defendant's actions were within the accepted standard of care.[93]  Here, the Corizon Defendants have not produced such a conclusory affidavit, but rather, have presented detailed evidence regarding Plaintiff's medical records and the standard of care for hepatitis C patients.  Thus, Plaintiff was required to present his own evidence to establish a genuine dispute of material fact.[94]  Because Plaintiff has failed to make such a showing, Plaintiff's claims for medical malpractice and negligence cannot survive summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff's Objection to Order of Magistrate Judge Denying Motion to Appoint Counsel (Doc. 58) is **OVERRULED.**

**IT IS FURTHER ORDERED** that the Corizon Defendants' Motion to Dismiss (Doc. 76) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Corizon Defendants' Motion for Summary Judgment (Doc. 83) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Objection to Order of Magistrate Judge Denying Motion to Reconsider Out of Time (Doc. 59) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 20th day of November, 2020.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[93] *Id.* at 1144–45.

[94] *Kannady*, 590 F.3d at 1169 (citations omitted).

-23-